# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Tyron Cardell Silva, ) | C/A No. 2:15-CV-2359-BHH-MGB |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Capt. C. Rogers, Lt. G. Mickens, ) | |
| Sgt. T. Prioleau, Sgt. M. Williams, ) | |
| Officer W. Jones, Officer C. McCinico, ) | |
| Officer P. James, Officer Lucus, ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

The Plaintiff, appearing *pro se* and *in forma pauperis*, brings this action under Title 42, United States Code, Section 1983. The Plaintiff is currently in the custody of the South Carolina Department of Corrections ("SCDC") and currently housed at Ridgeland Correctional Institution. This matter is before the court on Defendants' Motion for Summary Judgment. (Dkt. No. 32.) On December 30, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 33.) The Plaintiff responded to the Defendant's Motion on January 25, 2016, with an affidavit (Dkt. No. 38) and on March 11, 2016, with the Plaintiff [sic] Objection to Defendants [sic] Motion for Summary Judgment. (Dkt. No. 45.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. For the reasons stated herein, the undersigned recommends that the Defendants' Motion for Summary Judgment be granted.

1

# ALLEGED FACTS[1]

On June 15, 2013 at approximately 8:30 p.m., the Plaintiff called for Officer W. Jones and requested to speak with him outside of the Plaintiff's cell. Jones took the Plaintiff out of the cell, and they spoke in the hallway. The Plaintiff told Jones that other inmates were planning to kill the Plaintiff and that he needed to be placed in protective custody. Jones relayed the information to his supervisor, Capt. C. Rogers, who denied the Plaintiff's request. Lt. G. Mickens and Sgt. T. Prioleau arrived to assist Jones in returning the Plaintiff to his cell. The Plaintiff told Mickens that other inmates had homemade keys to the cells and were planning to kill him that night. Mickens told the Plaintiff nothing could be done that night. The Plaintiff refused to go back to his cell. Mickens told the Plaintiff to return to his cell or the officers would use force to return him to his cell. Mickens, Prioleau, and Jones each pulled out their mace. The Plaintiff then ran towards the prison yard.

The Plaintiff ran to the plaza gate where eight (8) officers were able to surround him. The Plaintiff was twice told by Rogers to return to his cell. The Plaintiff continued telling the officers he could not return to his cell because other inmates would use homemade keys to enter his cell and kill him. After the Plaintiff continued to refuse to return to his cell, Rogers directed Prioleau to get a 37mm wood baton.[2] Rogers then again told the Plaintiff to return to his cell. The Plaintiff refused stating he wanted to be placed in protective custody.

The Plaintiff then began climbing the gate which was topped with razor wire. (Dkt. Nos. 38 at 2; 32-3 at 1.) The Plaintiff was directed to stop climbing the gate and he complied. (Dkt. No. 38 at 2.) Rogers then directed Jones to block the Plaintiff in with a shield to stop him from

---

[1] All of the Alleged Facts are taken from pages 3-4 of the Complaint, Dkt. No. 1, unless otherwise indicated.
[2] This appears to be referring to a non-lethal projectile that is able to fire a wooden pellet at a person.

running. Then Sgt. M. Williams, Mickens, Officer C. McCinico, Officer P. James, and Officer Lucus surrounded the Plaintiff with their mace pulled out. Rogers then directed Prioleau to shoot the Plaintiff with the wooden baton twice in the face, which he did. Simultaneously, Williams, James, and McCinico discharged their mace in the Plaintiff's face. The Plaintiff was then seen by a nurse who is not a party to this lawsuit. The Plaintiff alleges that these events caused him to experience mental health issues, back and neck problems, and headaches. The total amount of mace discharged was 186 grams.[3] (Dkt. Nos. 32-3 at 3; 45-1 at 7.)

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the

---

[3] The Defendants largely agree with the Plaintiff's version of the events with a few exceptions. The Defendants allege that the Plaintiff was elusive and kept running from officers until he was captured. (Dkt. No. 32-3 at 2.) The Plaintiff does not deny this. The Defendants allege that after the Plaintiff descended the gate, he charged Williams with what appeared to be a homemade knife. (Dkt. Nos. 32-3 at 2.) The Plaintiff denies having a knife. (Dkt. No. 1 at 4.) The Defendants allege that the Plaintiff later admitted that he had smoked THC on the day of the incident, was hallucinating, and did not remember much of the night. (Dkt. No. 32-6 at 1-2.)

summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "This court is required to construe *pro se* complaints and petitions liberally." *Stout v. Robnett*, 107 F. Supp. 2d 699, 702 (D.S.C. 2000) (internal quotations and citations omitted). " [P]*ro se* complaints…are held to a less stringent standard than those drafted by attorneys,…and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case." *Id.*

## **ANALYSIS**

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir.1996).  A plaintiff must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)" to establish an excessive

4

force claim. *Iko v. Shreve,* 535 F.3d 225, 238 (4th Cir. 2008) (*citing Williams,* 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, a plaintiff must prove that a defendant's use of force was done "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986). "[T]he 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Iko*, 535 F.3d at 239)). The Fourth Circuit has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Parker*, 625 F. App'x at 198 (quoting *Iko,* 535 F.3d at 239).

To establish the objective component, the Plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 2 (quoting *Wilson,* 501 U.S. at 303.) When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of how significant a plaintiff's injury may be. *Id.*; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

When viewing the facts in the light most favorable to the Plaintiff, the record does not contain any facts to satisfy the subjective component of *Iko*. When analyzing the force used in the case at bar with the factors put forth in *Parker* and *Iko*, the evidence supports that the force

5

applied by the Defendants was a good-faith effort to restore discipline and was not carried out maliciously and sadistically to cause harm. The force applied was necessary as the Plaintiff, by his own account, refused to return to his cell when ordered by prison officials five (5) different times. The Plaintiff admits he ran from officers into the prison yard and then tried to climb the prison gate while refusing to comply with the officers' orders.  The Plaintiff does not deny that he was actively evading the officers trying to subdue him without the use of force.  The amount of force used by the Defendants was appropriate when compared to the need to subdue the Plaintiff.  The Plaintiff repeatedly refused to comply with the officer's orders, ran from officers, and climbed the prison gate. As to the extent of any reasonably perceived threat, the Defendants responded in proportion to the Plaintiff's actions.  As discussed *supra* the Plaintiff repeatedly refused to comply with any orders, ran from officers, and climbed the prison gate.  The Plaintiff denies he had any type of weapon.  Regardless of whether the officers perceived he had a weapon, their actions were reasonable in light of his verbal and physical resistance to the officers.

Weighing the final *Iko* factor, the Defendants made numerous efforts to temper the forceful response.  The Plaintiff was verbally warned numerous times that they would use force if he did not return to his cell.  Before any mace was used, the Defendants presented the mace to the Plaintiff and again ordered him to return to his cell.  Likewise, the Plaintiff was told to go back to his cell before the 37mm wood baton was used.  Once the Plaintiff was contained and under control, the force was stopped immediately, and the Plaintiff was promptly seen by a nurse.

The Plaintiff contends that prison officials did not comply with their own policy when refusing his request to be placed in protective custody. (Dkt. No. 45-1 at 7.)  The fact that the

6

Defendants allegedly did not follow SCDC policy does not, in itself, amount to a constitutional violation. *See United States v. Caceres*, 440 U.S. 741 (1978); *see also Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Additionally, the Fourth Circuit has held that inmates do not exercise "a constitutional right by requesting protective custody." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). The Plaintiff's argument is without merit. In viewing the facts in the light most favorable to the Plaintiff, this court finds there is no genuine issue of material fact as to whether the Plaintiff "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and this court recommends that the Defendants are entitled to summary judgment as a matter of law. *Dowe*, 145 F.3d at 658.

## CONCLUSION

Wherefore, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Dkt. No. 32.) be **GRANTED**.

IT IS SO RECOMMENDED.

July 11, 2016

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).